UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cr-20137-JEM/Becerra

UNITED STATES OF AMERICA,

v.

EDUARDO ULISES MARTINEZ,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS SUPERSEDING INDICTMENT[1]**

**THIS CAUSE** came before the Court on Defendant, Eduardo Ulises Martinez's ("Martinez" or "Defendant") Motion to Dismiss Superseding Indictment and Incorporated Memorandum of Law (the "Motion"). ECF No. [91]. The United States of America (the "Government") filed a Response, ECF No. [96], and Defendant filed a Reply, ECF No. [98]. In addition, the Government filed a Notice of Supplemental Authority. ECF No. [106]. The Court held oral argument on this matter (the "Hearing"). ECF No. [107]. Thereafter, Defendant submitted a Notice of Supplemental Authority, ECF No. [111], and the Government submitted a Response to Defendant's Notice of Supplemental Authority, ECF No. [116]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendant's Motion be **DENIED**.

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred this matter to the undersigned. ECF No. [99].

I.     BACKGROUND

Defendant is an art dealer who collects and trades sculptures that contain ivory. In a Superseding Indictment on May 25, 2022, the Government charged Defendant with thirteen[2] Counts related to such activity. ECF No. [19]. The allegations in the Superseding Indictment do not identify the particular animal species of the ivory in the sculptures. *See id.* Specifically, Counts 1 through 6 charge Defendant with smuggling goods into the United States, in violation of 18 U.S.C. § 545, by

> fraudulently and knowingly import[ing] and bring[ing] into the United States merchandise and receiv[ing], conceal[ing], buy[ing] and sell[ing] and in any manner facilitat[ing] the transportation, concealment, and sale of merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, in that said merchandise was not first made available for inspection and properly declared to the United States Fish and Wildlife Service and the United States Customs and Border Protection as required by Title 50, Code of Federal Regulations, Sections 14.52 and 14.61[.]

*Id.* at 3. Section 14.52(a) "require[s] that a United States Fish and Wildlife Service Officer clear all wildlife to be imported into or exported from the United States prior to release from detention by customs officers." *Id.* at 2 (citing 50 C.F.R. § 14.52(a)). Section 14.61 requires that anyone importing or exporting wildlife into the United States "complete[ a] Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177), signed by the importer or exporter, or the importer or exporter's agent, [to] be filed with the United States Fish and Wildlife Service upon the importation or exportation of any wildlife at the place where clearance is requested." *Id.* (citing 50 C.F.R. § 1461).

Additionally, Counts 7 and 8 charge that Defendant violated 18 U.S.C. Section 545 by

> fraudulently and knowingly receiv[ing], conceal[ing], buy[ing] and sell[ing] and in any manner facilitat[ing] the transportation, concealment, and sale of merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, in that said merchandise was not first made available

---

[2] Count 14 has been dismissed from the Superseding Indictment. ECF No. [59].

> for inspection and properly declared to the United States Fish and Wildlife Service and the United States Customs and Border Protection as required by Title 50, Code of Federal Regulations, Sections 14.52 and 14.61[.]

*Id.* at 4–5.

Counts 9 through 12 charge the Defendant with smuggling goods outside the United States, in violation of 18 U.S.C. § 554, by

> fraudulently and knowingly receiv[ing], conceal[ing], buy[ing], and sell[ing] and in any manner facilitate[ing] the transportation, concealment, and sale of merchandise prior to exportation, knowing the same to be intended for exportation contrary to law or regulation of the United States, in that the merchandise was not first made available for inspection and properly declared to the United States Fish and Wildlife Service and the United States Customs and Border Protection as required by Title 50, Code of Federal Regulations, Sections 14.52 and 14.63[.]

*Id.* at 5–6.

Count 13 charges the Defendant with obstruction of justice, in violation of 18, U.S.C. § 1503, alleging that he

> did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of justice, specifically by soliciting Witness 1 to provide false documentation, testimony, and evidence related to the sale of sculptures containing ivory for the purpose of obstructing an investigation into illegal smuggling of ivory[.]

*Id.* at 6–7.

## II. THE INSTANT MOTION

Defendant moves to dismiss the Counts in the Superseding Indictment on various grounds. ECF No. [91]. First, Defendant argues that the Court lacks subject matter jurisdiction as to Counts 1–12 because the Superseding Indictment charges violations of agency *regulations* that are civil in nature. *Id.* at 11. Defendant argues that the rule of lenity further supports dismissal for lack of subject matter jurisdiction, because the regulations are ambiguous and their text "indicates to the average person that liability is strictly civil and monetary." *Id.* Defendant also challenges Counts 9–12, arguing that the statutory language of 18 U.S.C. § 554 precludes charges for mere intent to

3

export, without actual exportation. *Id.* at 14–15. Finally, Defendant argues that Count 13 charging Defendant with obstruction of justice should be dismissed because there were no proceedings that Defendant could have interfered with at the time of the Superseding Indictment. *Id.* at 17.

In its Response, the Government first argues that Defendant's Motion is untimely pursuant to Southern District of Florida Local Rule 88.9(c). ECF No. [96] at 4.[3] At the Hearing, the Government conceded that Defendant can raise a challenge to subject matter jurisdiction at any time but argued that to the extent Defendant's arguments are based on the sufficiency of the pleading, they are untimely. *See* ECF No. [107]. In response to Defendant's challenges to subject matter jurisdiction, the Government argues that the regulations are not ambiguous, are "criminal in nature," and constitute "laws" under § 545 "because federal law criminalizes the failure to file declarations that the Secretary of the Interior deems necessary to enforce the [Endangered Species Act 'ESA'] or its [Convention of International Trade of Endangered Species of Wild Fauna and Flora ('CITES')] obligations." *Id.* at 7. The Government further argues that as to the Counts charged under Section 554(a), that statue specifically allows for charges "contrary to law *or any regulation*." 18 U.S.C. § 554(a) (emphasis added); *see also* ECF No. [107]. As to Counts 9–12, the Government argues that Defendant's challenge fails because the Superseding Indictment charges Defendant with violating the second clause of § 554(a), which does not require actual exportation, but rather "requires that the merchandise 'be *intended* for exportation contrary to law.'" *Id.* at 12 (emphasis added). Finally, the Government argues that Defendant's challenge to Count 13 fails because "[t]he language in the Superseding Indictment alleges all three required elements of obstruction of justice . . . . track[ing] the language of § 1503, which is all that is

---

[3] The Government's Notice of Supplemental Authority includes citations in further support of its argument that Defendant's Motion is not timely. *See* ECF No. [106].

required." *Id.* at 16.  Moreover, "[t]o the extent the Defendant argues that the knowledge element is missing from Count 13," the Government argues that "corruptly" specifies the intent. *Id.*  The Government also argues that Defendant's factual arguments are improper at this stage. *Id.*

In his Reply, Defendant maintains that his Motion timely challenges the Court's subject matter jurisdiction, as permitted by Fed. R. Crim. P. 12(b)(2).  ECF No. [98] at 3.  Moreover, Defendant maintains that the regulations at issue here "specifically outline an administrative process and administrative fines; not criminal punishment." *Id.* at 5.  Defendant contends the cases cited by the Government with similar prosecutions either resulted in a plea, such that this Court need not have considered the indictments, or those cases concerned violations of CITES, ESA, or the Lacey Act, as opposed to regulations. *Id.* at 6–7.  Defendant also reasserts his arguments as to Counts 9–12 and 13. *Id.* at 8–9.

Defendant and the Government each submitted supplemental briefs in support of their subject matter jurisdiction arguments, reaffirming their arguments from the Hearing.  *See* ECF Nos. [111], [116].

### III.   ANALYSIS

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).  The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government.  *See id.*  Additionally, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).  A defendant may move to dismiss an indictment pursuant to Federal Rule of Criminal Procedure 12(b), including for failure to state an offense, lack of jurisdiction, or constitutional reasons.  *See United States v. Kaley*, 677

F.3d 1316, 1325 (11th Cir. 2012). A defendant may raise a challenge that the court lacks jurisdiction "at any time while the case is pending[.]" *See* Fed. R. Crim. P. 12(b)(2).

        **A.    The Subject Matter Jurisdiction Challenge Is Timely; Other Challenges Are Not Timely But Should Nevertheless Be Considered.**

The Court will first address the Government's argument that the instant Motion should be dismissed as untimely. To the extent Defendant's Motion challenges the Court's subject matter jurisdiction, it is undisputed that the Motion is timely as such arguments can be raised at any time. *See* Fed. R. Crim. P. 12(b)(2).

To the extent Defendant's Motion addresses arguments outside of this Court's subject matter jurisdiction, however, those arguments are not timely. Local Rule 88.9(c) provides that "[m]otions in criminal cases shall be filed and served within twenty-eight (28) days from the arraignment of the defendant to whom the motion applies, except that motions arising from a post-arraignment event shall be filed and served within a reasonable time after the event." S.D. Fla. L.R. 88.9(c). Here, Defendant was arraigned on the Superseding Indictment on June 6, 2022. ECF No. [30]. Thus, the Motion should have been filed by July 5, 2022, 28 days from the date of Defendant's arraignment. Defendant filed his Motion on September 23, 2022, more than two and a half months after the deadline mandated by S.D. Fla. L.R. 88.9(c).

Defendant argued at the Hearing that the Motion's untimeliness should be excused for good cause, based on the totality of the circumstances, including the high volume of discovery in this case and the various issues that have been raised and litigated to date. *See* ECF No. [107]. The undersigned finds that the volume of discovery is not sufficient cause, especially given that the issues raised were not related to any discovery. However, given that there is no evidence that the Government was prejudiced by the untimeliness and the significance of the issues raised, the undersigned **RECOMMENDS** that the entirety of the Motion be considered. *See United States v.*

*Cathey*, 591 F.2d 268, 271 n.1 (5th Cir. 1979) ("Under Fed. R. Crim. P. 12(b)(2) motions to dismiss an indictment must be made before trial or they are waived. Rule 12(f), however, excuses for good cause failure to move for dismissal prior to trial.").

  **B.**  **Sections 545 and 554(a) Are Not Ambiguous, And Therefore Counts 1-12 Are Not Subject To Dismissal.**

Defendant argues that Counts 1–12 are ambiguous and, pursuant to the rule of lenity, should be dismissed. *See* ECF No. [91] at 10–14. According to Defendant, because the regulations here do not contemplate criminal punishment, they are not "laws" as that term is used in Section 545. *Id.* at 10–11.[4] Defendant cites to the text of the regulations at issue here, Title 50 C.F.R Part 11, and rule-making by the United States Fish and Wildlife Service ("USFWS"), *see* ECF No. [111], arguing that the absence of any reference to criminal punishment means that the average person would think that the regulations contemplate "strictly civil and monetary" penalties. ECF No. [91] at 11; *see also* ECF No. [111]. Moreover, Defendant argues, this creates ambiguity in the statutes serving as the basis for Defendant's charges. ECF No. [91] at 11. Defendant argues that where ambiguity exists, the rule of lenity requires that any ambiguity be resolved in favor of Defendant. *Id.* at 11–12.

The Government responds that the USFWS regulations that serve as the predicate offense to 18 U.S.C. § 545 constitute "laws" as contemplated by Section 545. ECF No. [96] at 5. The Government cites to *United States v. Izurieta*, 710 F.3d 1176 (11th Cir 2013) and *United States v Mitchell*, 39 F.3d 465 (4th Cir. 1994) in support of its argument. *See id.* at 6–7. The Government notes that "the rule of lenity applies 'only where there is a 'grievous ambiguity or uncertainty' in the statute,'" such as "'where the text or history of the regulation creates a strong perception that

---

[4] Defendant does not address that Counts 9–12 charge violations of Section 554(a), not Section 545.

a violation of the regulation will give rise to civil remedies only.'" *Id.* (quoting *Izurieta*, 710 F.3d at 1181). According to the Government, there is no such ambiguity here, because even if the regulations themselves do not reference criminal liability, "federal law criminalizes the failure to file declarations that the Secretary of the Interior deems necessary to enforce the ESA or its CITES obligations[,]" evidenced by 16 U.S.C. § 1538(e), and 16 U.S.C. § 1540(b)(1) sets forth criminal violations for failure to comply with the declaration requirement. *Id.* at 7–8; *see also* ECF No. [116]. Additionally, the Government cites to other cases within this District concerning charges of the same violations. *Id.* at 9–11 (citing cases). At the Hearing, the Government also argued that Defendant's rule of lenity arguments as to Counts 9–12 fail because Section 554(a) specifically allows for charges "contrary to law *or any regulation.*" 18 U.S.C. § 554(a) (emphasis added); *see also* ECF No. [107].

The undersigned first turns to Counts 1–8 of the Superseding Indictment, which charge Defendant with violating 18 U.S.C. § 545, alleging that Defendant smuggled goods into the United States in a manner that was "contrary to law." The Eleventh Circuit has not considered whether the specific regulations at issue here are "laws" as contemplated by Section 545. However, the Eleventh Circuit's decision in *United States v. Izurieta*, 710 F.3d 1176 (11th Cir 2013) is instructive here, and as the Parties agree, guides the analysis.

In *Izurieta*, the Eleventh Circuit evaluated whether an indictment charging the defendants "with unlawful importation in violation of 18 U.S.C. § 545[] sufficiently alleged crimes" where "[t]he unlawful importation charge in the indictment was based on violations of a Customs regulation, alleging the 'failure to deliver, export, and destroy with FDA supervision' certain imported goods found to be adulterated." *Izurieta*, 710 F.3d at 1178–79 (citing 19 C.F.R. § 141.113(c)). The Eleventh Circuit noted that the "key question as to what 'law' must be violated

8

for importation to be 'contrary to law' under the charged statute, 18 U.S.C. § 545[,]" was a matter of first impression before the Court, and that a split existed amongst sister courts. *Id.* at 1179.

Specifically, in deciding the issue, the Eleventh Circuit considered cases from the Ninth Circuit and Fourth Circuit in its analysis. *See id.* at 1180–82. In *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008), the Ninth Circuit reasoned that the word "law" in 18 U.S.C. § 554 must not include regulations, otherwise the later mention of regulations would be superfluous. *Id.* at 1180 (citing *Alghazouli*, 517 F.3d at 1187). The Eleventh Circuit determined that the Ninth Circuit's reasoning resulted in a "complete rejection of regulatory law absent a coordinate criminal statute" and declined to adopt the Ninth Circuit's analysis. *Id.* at 1180–81. Instead, the Eleventh Circuit favored the Fourth Circuit's approach in *United States v Mitchell*, 39 F.3d 465 (4th Cir. 1994), which adopted the test from *Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96 (1979) (the "*Chrysler* test") to determine whether a regulation has the "force and effect of law." *Id.* at 1181 (citing *Mitchell*, 39 F.3d at 468). Specifically, in determining whether a given regulation has the "force and effort of law," a court should evaluate: (1)"whether the regulations were 'substantive' or legislative-type' rules, as opposed to 'interpretative rules, general statements of policy, or rules of agency organization, procedure or practice'"; (2) "whether the regulations were promulgated pursuant to delegated quasi-legislative authority"; and (3) "whether the regulations were issued in conformity with congressionally-imposed procedural requirements such as the notice and comment provisions of the Administrative Procedure Act.'" *Id.* at 1181 (quoting *Mitchell*, 39 F.3d at 465) (internal quotations omitted).

The Eleventh Circuit, however, does not appear to have accepted the *Chrysler* test alone as determinative of whether Section 545 is ambiguous as to any particular regulation, and added that courts should consider whether "the text or history of the regulation creates a strong perception

9

that a violation of the regulation will give rise to civil remedies only" or whether the statutory framework includes criminal punishment. *See id.* at 1182. In doing so, the Court in *Izurieta* found that the regulation at issue (1) was "clearly a substantive regulation establishing obligations for importers[,] (2) "became effective after a robust notice and comment period" and (3) "was issued under the authority of a variety of statutes[.]" *Id.* at 1183. Nevertheless, the Eleventh Circuit determined that the regulation "fails to qualify as a 'law' for purposes of criminal liability under 18 U.S.C. § 545 not because it has no effect as a law but because that law is civil only[.]" *Id.* at 1184. In particular, the Eleventh Circuit considered that the statutes that authorized the regulation "[did not] establish criminal liability for a failure to comply with the provision itself, referring instead to only civil remedies." *Id.*

Whereas *Izurieta* concerned regulations distinct from those at issue here, *Mitchell* applied the *Chrysler* test to evaluate whether 50 C.F.R. § 14.61[5] was a "law" within the meaning of Section 545. *See Mitchell*, 39 F.3d at 470–71. Ultimately, the Fourth Circuit determined that "[b]ecause the regulations Mitchell was charged with violating affect individual rights and obligations, were authorized and contemplated by appropriate grants of quasi-legislative authority, and were promulgated in conformity with applicable procedural requirements, we conclude that those regulations have the force and effect of law and therefore are encompassed by the 'contrary to law' provision of § 545." *Id.* at 471.

Applying the *Chrysler* test here, as the Fourth Circuit did in *Mitchell*, the undersigned finds that 50 C.F.R. §§ 14.52 and 14.61 are "laws" within the meaning of Section 545. As to the first prong of the *Chrysler* test, the regulations are substantive, as they affirmatively require the filing

---

[5] Although *Mitchell* only addressed 50 C.F.R. § 14.61, explicitly, 50 C.F.R. § 14.52 states *what* must be declared under Section 14.61, such that the regulations act in tandem.

of forms, which affects the rights of people. As to the second prong, 16 U.S.C. § 1540(f) authorized the Secretary of the Interior to "promulgate such regulations as may be appropriate to enforce this Act," and the Secretary of the Interior promulgated regulations pursuant to this statute via 50 C.F.R. §§ 14.52 and 14.61. Finally, under the third prong, the public was on notice, given the notice and comment provisions of the Administrative Procedure Act. Accordingly, the regulations are "laws" pursuant to the *Chrysler* test.

Given that the regulations at issue, 50 C.F.R. §§ 14.52 and 14.61, satisfy the *Chrysler* test, the undersigned turns, as the Court did in *Izurieta,* to whether the regulations create an ambiguity as to whether violations will be civil or criminal, raising concerns as to lenity. Following the Hearing, Defendant maintained his argument that the regulations *themselves* do not contain any references to criminal penalties, filing a Supplemental Notice of Authorities referring to the text of 50 C.F.R. § 11.1 and USFWS rules regarding Importation, Exportation and Transportation of Wildlife. *See* ECF No. [111]. Defendant's argument misses the mark. As the Government reasserted in its Response to Defendant's Notice of Supplemental Authority, "[t]he reference to criminal penalties is not located within the regulations" but rather is evident in the federal statutory scheme. *See* ECF No. [116] at 3. Specifically, 16 U.S.C. § 1538(e) states, "[i]t is unlawful for any person importing or exporting fish or wildlife (other than shellfish and fishery products . . . to fail to file any declaration or report as the Secretary deems necessary to facilitate enforcement of this chapter or to meet the obligations of the Convention." 16 U.S.C. § 1538. Further, 16 U.S.C. § 1540(b)(1) sets forth criminal violations for failure to comply with the declaration requirement, noting that "[a]ny person who knowingly violates any provision of any other regulation issued under this chapter shall, upon conviction, be fined not more than $25,000 or imprisoned for not more than six months, or both." 16 U.S.C. § 1540(b)(1). Thus, unlike the regulation in *Izurieta*,

11

where there were *no* references to criminal consequences within the statutory or regulatory scheme for failure to comply with the conduct required by the regulation, here, even if 50 C.F.R. §§ 14.52 and 14.61 do not directly reference criminal punishment, there are federal statutes that do criminalize the failure to comply with the conduct required by the regulation. Because the clear language of 16 U.S.C. §§ 1538 and 1540(b)(1) indicate that failure to comply with these regulations could result in criminal charges, the Court does not find that the regulations at issue are ambiguous. Accordingly, Defendant's arguments as to Counts 1–8, alleging violations of Section 545, fail.

The undersigned next turns to the second statute at issue, 18 U.S.C. § 554(a). The plain language of that statute includes criminal charges for smuggling goods outside of the United States in a manner that is "contrary to law *or any regulation*." 18 U.S.C. § 554(a) (emphasis added). Unlike Section 545, Section 554(a)'s text explicitly references violations of regulations, and the Court need not analyze whether the regulations at issue have the force of law. The remaining argument is whether the rule of lenity should apply given that the regulations do not sufficiently put an individual on notice of the criminal penalties. The ambiguity analysis above applies equally here. Counts 1–8 charge Defendant under Section 545 for violations of 50 C.F.R. §§ 14.52 and 14.61 (import declaration requirements), while Counts 9–12 charge Defendant under Section 554 for violations of 50 C.F.R. §§ 14.52 and 14.63 (export declaration requirements). Because 16 U.S.C. § 1538(e) makes it unlawful to fail to file a declaration "for any person importing or exporting . . . .," 16 U.S.C. § 1538, and 16 U.S.C. § 1540(b)(1) includes criminal violations for failure to comply with the declaration requirement, 50 C.F.R. § 14.63, like the other regulations previously discussed, is not ambiguous. Accordingly, Defendant's lenity arguments fail as to Counts 9–12.

### C. Counts 9–12 Are Sufficient Because Actual Exportation Is Not Required.

Defendant argues that Counts 9–12, which charge Defendant with smuggling goods outside of the United States in violation of 18 U.S.C. § 554, fail to state any offense because Defendant did not actually export any of the alleged items, and the plain reading of the regulations shows that the regulations require actual exportation. *See* ECF No. [91] at 14–15. The Government responds that Defendant is charged with violating the second clause of Section 544(a), which "does not require that the merchandise be exported" but "[r]ather, it requires that the merchandise 'be intended for exportation contrary to law.'" *See* ECF No. [96] at 12.

The Court first turns to the statute. Section 554(a) includes criminal penalties for "[w]hoever fraudulently or knowingly . . . receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, *prior to exportation, knowing the same to be intended for exportation* contrary to any law or regulation of the United States[.]" 18 U.S.C. § 554 (emphasis added). As the Government notes, although the first clause of Section 554(a) refers to "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States," 18 U.S.C. § 554, the Superseding Indictment charges Defendant with the second clause, which criminalizes conduct prior to the exportation if the item was intended for exportation. *See* ECF No. [19] at 5–6. Thus, the Superseding Indictment includes a sufficient description of the charge, which requires that the merchandise "be intended for exportation contrary to law," not that the merchandise be exported. *See id.* Accordingly, the plain language of the statute requires only intention for exportation.

Although the Eleventh Circuit has not ruled on this issue, it has upheld convictions under Section 554, albeit based on sufficiency of the evidence, for intent to export unlawful items. *See United States v. Campo*, 840 F.3d 1249, 1264–65 (11th Cir. 2016). The indictment in *Campo*

13

alleged that the defendant "knowingly received, concealed, bought, and facilitated the transportation and concealment of an AR–15 upper receiver, prior to exportation, knowing that it was intended for exportation, in violation of 18 U.S.C. § 554." *Id.* at 1264. Specifically, "Campo led an international arms trafficking organization" and "hired people to act as straw purchasers who would obtain firearms and firearms parts in their own names and transfer them to him." *Id.* at 1252. Moreover, "Campo's workers would also disassemble the firearms and firearms parts into smaller pieces; conceal them within innocuous looking items . . . and reseal the items to make them appear new." *Id.* While the facts of *Campo* are indisputably distinct from those here, the defendant in *Campo* was likewise charged with violating the second clause of 18 U.S.C. § 554. *Id.* at 1264. On appeal, the defendant in *Campo* argued that there was "insufficient evidence that he intended to export the AR-15 upper receiver" that he possessed on the day of his arrest. *Id.* at 1266. In finding that there was sufficient evidence of the defendant's intent to export the AR-15 upper receiver, the Eleventh Circuit considered that at the time of Campo's arrest, police witnessed Campo approach and enter a car, their subsequent search of which revealed: (1) the AR-15 upper receiver in the trunk; (2) a document highlighting offices of a commercial airline that members of the scheme used to ship items; (3) a note referencing sawhorses, which members of the scheme would use to conceal firearms; (4) "a list reading 'twenty-five 80 percent,' which is an unfinished firearm that goes along with many rifles including AR–15s"; and (5) a "Taurus revolver with a wooden handle[,]" given that there had been testimony that "the firearm that Campo carried and used was a .38 revolver with a wooden grip, not an AR–15 rifle." *Id.* Clearly, since the weapon at issue was found at the time of Campo's arrest, no actual exportation occurred. *See id.* at 1264. Nevertheless, the Eleventh Circuit found there was sufficient evidence to uphold the defendant's conviction under 18 U.S.C. § 554. *See id.* at 1265.

In addition, while the Eleventh Circuit has not directly addressed whether actual exportation is a required element of 18 U.S.C. § 554, the Ninth Circuit Court of Appeals has, and rejected similar arguments to those raised by Defendant here. *See United States v. Chi Tong Kuok*, 671 F.3d 931, 944–45 (9th Cir. 2012). In *Kuok*, the defendant delt with "protected defense articles." *Id.* at 934. He challenged his conviction under 18 U.S.C. § 554, arguing that the relevant item "was not 'intended for exportation'" and because it "was not exported, the government could not satisfy the statutory requirement that the conduct occur 'prior to exportation.'" *Id.* at 943. The Ninth Circuit rejected both arguments. *See id.* at 943–45. First, the Ninth Circuit determined that "[t]he mens rea [of Section 554(a)] requires only 'knowing' the item is intended for export, rather than an 'intent to export'" and "no specific actor need form the intent to export the item." *Id.* at 944. Second, the Ninth Circuit determined that actual exportation is not required, as interpreting "prior to exportation" in that manner "render[s] the entire provision a nullity[.]" *Id.* at 945. Given the support within the Eleventh Circuit, as well as the Ninth Circuit, the undersigned finds Defendant's argument that exportation is required for a charge under 18 U.S.C. § 554 to be unpersuasive.

D. **Count 13 Sufficiently Alleges A Violation Of 18 U.S.C. § 1503.**

Defendant argues that Count 13, charging a violation of obstruction of justice under 18 U.S.C. § 1503, fails because the Superseding Indictment does not include allegations that Martinez had notice of any investigation or proceeding, nor could it, because the grand jury was not impaneled at the time of the alleged obstruction. *See* ECF No. [91] at 16–18. The Government responds that the Superseding Indictment sufficiently alleges the elements of Section 1503. *See* ECF No. [96] at 15–17.

Section 1503 contains three elements that must be proven to obtain a conviction: the defendant "(1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice." *United States v. Davis*, 854 F.3d 1276, 1289 (11th Cir. 2017) (quoting *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984)).

The Superseding Indictment alleges that Defendant "did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of justice, specifically by soliciting Witness 1 to provide false documentation, testimony, and evidence related to the sale of sculptures containing ivory for the purpose of obstructing an investigation into illegal smuggling of ivory . . . ." ECF No. [19] at 7. Because the allegations include the three required elements, Defendant's challenge to Count 13 fails.[6]

IV. **CONCLUSION**

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant's Motion, ECF No. [91], be **DENIED**.

IV. **OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, by **Monday, November 14, 2022 at NOON**. The undersigned finds that a shortened objection period is appropriate given the upcoming trial date, that the Parties were given ample time to argue their positions at the Hearing, and that the Parties submitted additional briefing following the Hearing. Any request for an extension of these deadlines must be made within **TWO (2)** calendar days of being served with the Report and Recommendation. Pursuant to Fed. R. Crim. P. 59(b), Eleventh Circuit Rule 3-1,

---

[6] At the Hearing, the Parties presented differing arguments as to whether there was an open investigation at the time that Defendant was indicted. However, although the Government noted that the investigation was open, this is a question of fact to be decided by the jury.

and accompanying Internal Operating Procedure 3, the Parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida, on November 9, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**